PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DANIEL ANTHONY MILLER,
            *Plaintiff-Appellant,*

v.

PRINCE GEORGE'S COUNTY,
MARYLAND, A Body Corporate and
Politic; JOHN L. DOUGANS,
            *Defendants-Appellees.*

No. 05-2250

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Roger W. Titus, District Judge.
(CA-05-292-RWT)

Argued: October 26, 2006

Decided: January 22, 2007

Before MICHAEL, MOTZ, and KING, Circuit Judges.

---

Affirmed in part and reversed in part by published opinion. Judge
Motz wrote the opinion, in which Judge Michael and Judge King
joined.

---

## COUNSEL

**ARGUED:** Terrell N. Roberts, III, ROBERTS & WOOD, Riverdale,
Maryland, for Appellant. Rajeshanand Kumar, OFFICE OF LAW
FOR PRINCE GEORGE'S COUNTY, Upper Marlboro, Maryland,
for Appellees.

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Daniel Anthony Miller, an African-American male, brings this civil rights action against Prince George's County, Maryland, and one of its police officers, Detective John L. Dougans. Miller alleges that Det. Dougans violated the Fourth Amendment by deliberately or recklessly making material false statements and omissions on a warrant affidavit, ultimately resulting in Miller's arrest without probable cause and imprisonment for an offense Miller never committed. The district court granted summary judgment to the County and Det. Dougans. For the reasons herein, we affirm in part and reverse in part.

I.

On July 23, 2002, Jeffrey and Jessica Nichols reported the theft of their lawnmower to the Prince George's County Police Department, which assigned Det. Dougans to investigate the case.[1]

Two days later, Det. Dougans began his investigation. He interviewed and obtained a statement from the victim, Mrs. Nichols. She told the detective that her neighbor, Michael Moses, reported seeing a green Jeep with light wood paneling in the neighborhood at about 1:30 a.m. in the early morning of July 23, just hours before the theft was discovered. This vehicle contained two individuals — "a skinny white guy and a girl." The Jeep, accompanied by a gold truck, circled the area about fifteen times. During the last lap, one of the vehicles pulled a wooden trailer containing what Moses later surmised was the stolen lawnmower. Based upon this information, Mrs. Nichols suspected that the thief was Daniel Miller, a young white man whom she had heard was on a stealing spree and she knew owned a green Jeep with light wood paneling. Mrs. Nichols believed that her lawnmower might be located at 9004 Woodyard Road in Clinton, Maryland, where Daniel sometimes stayed with his sister, Megan, and her boyfriend, Robert Frederick Owens. Mrs. Nichols told Det. Dougans that

---

[1]As we must, in reviewing this grant of summary judgment, we consider the facts in the light most favorable to the non-moving party, here Miller. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

she had reported all of this information to the police shortly after the theft. As a result, the police had recovered the stolen lawnmower from the house at 9004 Woodyard Road on the same day as the theft, but had made no arrests.

A week after speaking with Mrs. Nichols, Det. Dougans interviewed Megan Miller and Owens. In a written statement Megan denied all knowledge of the lawnmower. The 17-year-old Megan did tell Det. Dougans that she had a brother, Daniel, who was "a little older" than she. Megan's boyfriend, Owens, similarly denied any involvement in the theft; he maintained that the police had found the lawnmower at his house because he had purchased it from a "crack-head" who delivered it to him. Although Mrs. Nichols had identified a young white Daniel Miller as a suspect in the theft, Det. Dougans did not ask Megan or Owens where Megan's young white brother, Daniel, could be located.

On August 13, Det. Dougans conducted his final interview, obtaining a statement from the Nichols's neighbor, Michael Moses, in which Moses echoed the information about the "skinny white male" he had seen, who was "no older than 25" years old. In his statement, Moses also noted that he "wrote down the [license plate] tag [number]" of the Jeep on the night of the theft.[2] When asked about this at deposition, Moses testified that, in fact, he did not remember writing down a license plate tag number, but if he had, he would have given it to Mr. and Mrs. Nichols when the theft was discovered rather than keeping it for more than two weeks until Det. Dougans came around to investigate.

Det. Dougans also conducted three types of computer searches to investigate the theft. First, he searched the local criminal database using the name "Miller" or "Daniel Miller." This query produced the records for several Daniel Millers, including the Plaintiff. Plaintiff's

---

[2]Moses's police statement does not, however, contain a tag number. Det. Dougans acknowledged that he had erred in not having Moses include the tag number in the statement, but insisted that Moses gave him a slip of paper on which the tag number was written, and that Det. Dougans had placed that slip of paper in the case file. However, when examined, the case file contained no slip of paper of any sort.

record correctly set forth his height, weight, his 8/29/67 birthdate (meaning he was almost 35 at the time of the theft), and his driver's license number, M460135067673; the record also incorrectly noted his race as white. Det. Dougans then used Plaintiff's driver's license number, M460135067673, to search the state motor vehicle database. That search again retrieved Plaintiff's height, weight, and 8/29/67 birthdate, but correctly noted his race as black.

The retrieved record additionally stated that Plaintiff had no current license plate tag, but had once owned a Jeep, and three years earlier — in 1999 — had turned in the expired license plate tag (938751M) for the Jeep to the Maryland Motor Vehicle Administration (MVA). (Plaintiff submitted unrebutted evidence that tags turned in to the MVA are retained in a locked cabinet until destroyed.) Det. Dougans did not initiate any computer search using Plaintiff's expired tag number (938751M), and thus established *no* link between this tag number and the purported getaway car or the white suspect. Moreover, Det. Dougans searched the state criminal database for a white Daniel Miller with Plaintiff's 8/29/67 date of birth and did *not* retrieve a match.

Apparently no further investigative activity of any kind took place. Nevertheless, five months later on January 22, 2003, Det. Dougans filed an affidavit in support of an application for charges against a Daniel Anthony Miller, identifying him as a white male with Plaintiff's birthdate, height, weight, and driver's license number; the affidavit also linked the expired vehicle tag (938751M) once belonging to Plaintiff to the white suspect's getaway car. In his affidavit, Det. Dougans set forth the following as the basis for his probable cause to believe that the subject of the warrant stole the lawnmower and thus committed theft and second-degree burglary:

> During the victim's [Mrs. Nichols's] inquiry, they [sic] learned from witness Michael MOSES that a green Cherokee, driven by a white male had been observed by the witness MOSES pulling out of the victim's residence with a wooden trailer attached to the mentioned green Cherokee haling [sic] the victim's Griffin Lawnmower away. The witness Moses recorded the tag of the vehicle as Maryland 938751M. The investigation into the mentioned tag[3]

---

[3]Det. Dougans similarly stated in deposition that he had obtained the information about Plaintiff by initiating a computer search using a motor

revealed they [sic] had allegedly been turned into MVA and expired 3/99. The identity of the defendant MILLER was obtained interviewing the victims and witness. . . . The Co-Defendant Owens is the boy-friend of the Defendant Miller [sic] sister, whom [sic] is a juvenile (17-years old). The jeep [sic] Cherokee is the property of Defendant Miller, witness advised it was the same vehicle seen by him driving out of the driveway of victim Nichols [sic] residence. This Detective has attempted [sic] to make contact with Defendant Miller, but as of this date has been unable, due to Defendant staying at several different addresses throughout the county.

Based on this affidavit, the magistrate issued a warrant on the same day. There is no evidence that Det. Dougans ever attempted to serve the warrant on a Daniel Miller or otherwise attempted to find a Daniel Miller.

On May 29, 2004, Virginia State Trooper Rodney Ward stopped Plaintiff because his vehicle lacked a front tag. During a routine Department of Motor Vehicles check, Trooper Ward discovered the outstanding Maryland warrant for theft and second-degree burglary and took Plaintiff into custody. The warrant issued pursuant to Det. Dougans's affidavit thus caused the trooper to arrest the 37-year-old African-American Plaintiff for a crime Det. Dougans indisputably believed had been committed by a much younger white man.

---

vehicle tag number 938751M, assertedly given to him by Michael Moses. But Sergeant Duane Lee, a twenty-five year veteran officer employed by the records section of the state police, testified without contradiction that the computer records simply did *not* support Det. Dougans's testimony. Subpoenaed to produce all computer records relating to this investigation during the relevant time frame, Sgt. Lee undertook a comprehensive system search. He testified unequivocally that he found no evidence that any database had ever been searched using the tag number 938751M, contrary to Det. Dougans's testimony that he had used this number to initiate the computer search after obtaining it from Moses. Sgt. Lee opined that Det. Dougans, in fact, had obtained the tag number in the manner set forth in text above, i.e. only as part of the records for a *black* male.

While the warrant specified that the wanted individual was a white male, Trooper Ward testified that because the date of birth, hair and eye color, weight, height and full name of the individual wanted in Maryland matched the individual he had just stopped, he believed that he had arrested the suspect described in the warrant. The only information that did not match was the suspect's reported race. Plaintiff was held in prison in Virginia for a total of nineteen days on the warrant that Det. Dougans had obtained. On June 17, 2004, police cleared him of the charges and released him.

In February of 2005, Plaintiff initiated this action under 42 U.S.C. § 1983 and Maryland law, bringing constitutional and common law claims against Det. Dougans, and common law claims against the County. The district court concluded that Det. Dougans's actions did not violate Plaintiff's federal or state constitutional rights and that, even if they did, Det. Dougans was entitled to qualified immunity with respect to the federal constitutional claims. The court further held that Plaintiff's state law false arrest claims against Det. Dougans and the County failed because Det. Dougans was not the arresting officer, and that his malicious prosecution claims failed because Det. Dougans's affidavit provided probable cause for issuance of the arrest warrant. Accordingly, the court granted summary judgment to Det. Dougans and the County on all counts. Plaintiff timely appealed.

II.

When a law enforcement officer asserts that qualified immunity protects him from liability for a federal constitutional violation, as Det. Dougans does here, a court must consider two questions. First, we must determine, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Only if the answer is "yes" do we advance to "the next, sequential step," which is "to ask whether the right asserted was clearly established" at the time of the events at issue. *Id.* We conduct this latter inquiry by determining whether a reasonable officer would have understood that his conduct violated the asserted right. *Id.* at 202. "[T]he answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a defendant police officer's

motion for summary judgment on qualified immunity grounds." *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002).

### A.

We turn first to the initial *Saucier* question: whether, taking the facts "in the light most favorable" to Plaintiff Miller, "the facts alleged show" that Det. Dougans's "conduct violated a constitutional right." *Saucier*, 533 U.S. at 201.

Plaintiff maintains that the facts outlined above, considered in the light most favorable to him, allege a claim that he was seized without probable cause in violation of his Fourth Amendment rights. Unquestionably, "[t]he Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir. 1996); *see Malley v. Briggs*, 475 U.S. 335 (1986); *Franks v. Delaware*, 438 U.S. 154 (1978). Plaintiff acknowledges that he was arrested pursuant to a warrant, but claims that the warrant was not supported by probable cause. A plaintiff's allegations that police seized him "pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a . . . claim alleging a seizure that was violative of the Fourth Amendment." *Brooks*, 85 F.3d at 183-84.

Plaintiff Miller alleges here that his seizure was unreasonable because it followed from a warrant affidavit that was deficient because it was dishonest. To succeed on his claim, Plaintiff must prove that Det. Dougans deliberately or with a "reckless disregard for the truth" made material false statements in his affidavit, *Franks*, 438 U.S. at 171, or omitted from that affidavit "material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (internal quotation marks omitted).

"Reckless disregard" can be established by evidence that an officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had

obvious reasons to doubt the accuracy of the information he reported." *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)(internal quotation marks omitted); *see also*, *Forest v. Pawtucket Police Dept.*, 377 F.3d 52, 58 (1st Cir. 2004); *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995). With respect to omissions, "reckless disregard" can be established by evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003); *see also Wilson*, 212 F.3d at 788; *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993). A plaintiff's "allegations of negligence or innocent mistake" by a police officer will *not* provide a basis for a constitutional violation. *Franks*, 438 U.S. at 171.

Moreover, in order to violate the Constitution, the false statements or omissions must be "material," that is, "necessary to the [neutral and disinterested magistrate's] finding of probable cause." *Id.* at 155-56. To determine materiality, a court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson*, 212 F.3d at 789; *see also Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004). If the "corrected" warrant affidavit establishes probable cause, no civil liability lies against the officer.

Plaintiff Miller maintains that in the arrest affidavit Det. Dougans intentionally listed Plaintiff's birthdate, height, weight, driver's license number and vehicle tag number as those of a white man suspected of committing the burglary, when Det. Dougans knew (or recklessly disregarded the fact) that this information identified the Plaintiff, an African-American man never suspected of committing the burglary. Plaintiff also asserts that Det. Dougans, intentionally or with reckless disregard for the truth, omitted from his affidavit the source of the information about Plaintiff's birthdate, height, weight, and driver's license number — never stating that all of this information was obtained from the computer records of an African-American, who could not be the white suspect.

Moreover, Plaintiff asserts that in his affidavit Det. Dougans deliberately, or with reckless disregard for the truth, misrepresented information about Plaintiff's license plate tag number by stating that an eyewitness to the burglary supplied the number as that of the getaway

car driven by the white suspect, when actually Det. Dougans had obtained the tag number from the computer records of the African-American Plaintiff and had established *no* link between that number and the getaway car or the white suspect. Further, Plaintiff maintains that Det. Dougans deliberately, or with reckless disregard for the truth, omitted from the warrant affidavit the fact that he had searched the state criminal database for a white male with Plaintiff's birthdate and retrieved *no* match. Plaintiff contends that these misrepresentations and omissions were material; that is, a corrected affidavit — one without the misrepresentations and including the omissions — would not have provided probable cause to arrest him.

In support of his claim of qualified immunity, Det. Dougans does *not* argue that these misrepresentations and omissions are immaterial. Nor does he contend that, if deliberately or recklessly made, they would not violate Plaintiff's constitutional rights. Instead, Det. Dougans offers several singularly unpersuasive theories as to why we should nonetheless hold that the facts Plaintiff has alleged fail to assert the violation of a constitutional right.

First, and principally, Det. Dougans simply disputes the facts, arguing that Plaintiff's account of the facts is incorrect. The detective stoutly maintains that he did *not* "present [ ] false statements in his affidavit." Brief of Appellee at 6. For example, Det. Dougans claims that, as he stated in his affidavit, he *did* conduct a computer search using the license plate tag number that eyewitness Michael Moses told him was on the getaway car, despite the fact that Sgt. Lee testified that no record of such a computer search exists. Perhaps Det. Dougans may ultimately persuade a factfinder, but this argument cannot prevail on summary judgment, for at this stage we do not find facts. Rather, with respect to any factual dispute, we must take the facts in the "light most favorable to the party asserting the injury," i.e. Plaintiff. *Saucier*, 533 U.S. at 201.

In connection with his argument about the facts, Det. Dougans further contends that Plaintiff has offered no evidentiary support for his allegations and that Plaintiff's "entire argument is based upon mischaracterizations and conjecture." Brief of Appellee at 6. These words better describe Det. Dougans's account of the facts than Plaintiff's. For, in support of his claim, Plaintiff offers powerful evidence making

a "substantial preliminary showing" of a constitutional violation. *See Franks*, 438 U.S. at 155. Plaintiff proffers the testimony of Sgt. Duane Lee, a police officer with twenty-five years of experience, who is still employed by the Maryland State Police. After a thorough investigation of law enforcement computer records, Sgt. Lee concluded that Det. Dougans had obtained the identifying information listed on the warrant affidavit in connection with the records of a black man, not a white man; that the error as to race that occurred in Det. Dougans's initial computer search was corrected in his subsequent searches; that *no* link was ever established between Plaintiff's vehicle tag number and the purported getaway car or the white suspect; and that a computer search of the state criminal database for a white Daniel Miller with Plaintiff's 8/27/67 birthdate retrieved *no* match.

Not only is this evidence powerful, to date it is both undisputed and corroborated. On one hand, Det. Dougans, apart from his own self-serving testimony, has proffered no expert opinion or other evidence to rebut it. On the other, Plaintiff points to corroborating evidence, including the absence of any vehicle tag number in Det. Dougans's police file and eyewitness Moses's deposition testimony that he did not remember writing down the getaway car tag number but, if he had done so, he would have given it to the victims on the day of the theft, rather than to Det. Dougans two weeks later.

Taking this evidence in the light most favorable to Plaintiff, a reasonable jury could certainly conclude that the affidavit submitted by Det. Dougans contained misrepresentations and omissions made deliberately or with reckless disregard for "whether they thereby made[ ] the affidavit misleading." *Colkley*, 899 F.2d at 300 (internal quotation marks omitted); *see also Franks*, 438 U.S. at 164. Additionally, the evidence in the light most favorable to Plaintiff would support a finding that Det. Dougans "when viewing all the evidence . . . must have entertained serious doubts as to . . . the accuracy of the information he reported." *Wilson*, 212 F.3d at 788 (internal quotation marks omitted). Furthermore, the misrepresentations and omissions are material; an affidavit containing the omitted material and stripped of all misrepresentations would have asked the magistrate to issue a warrant for the arrest of a white suspect, named Daniel Miller, and would have omitted all information pertaining to Plaintiff. The "cor-

rected" affidavit would not have provided probable cause, "in light of all the evidence," to arrest Plaintiff. *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004). Nor would a warrant, stripped of this identifying information, have been executed against Plaintiff.

In addition to disputing the facts, Det. Dougans unconvincingly argues that because he subjectively intended that a white suspect be seized rather than the African-American Plaintiff, he did not violate Plaintiff's Fourth Amendment rights. His argument is foreclosed by the very cases on which he relies. *See Brower v. County of Inyo*, 489 U.S. 593 (1989); *Rucker v. Harford County*, 946 F.2d 278 (4th Cir. 1991). In *Brower*, the Supreme Court carefully explained that "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking" so long as the detention is "willful," meaning "a governmental termination of freedom of movement *through means intentionally applied*." *Brower*, 489 U.S. at 596-97. The fact that the seized individual is mistakenly thought to be another does not mean that the innocent individual has not been seized. Indeed, as we held in *Rucker*, "a fourth amendment seizure may occur notwithstanding that the person restrained was mistakenly thought to be another, because he nevertheless is the intended object of the specific act of physical restraint." 946 F.2d at 281.

Nor, contrary to Det. Dougans's contentions, does the fact that he was not the arresting officer eliminate his responsibility for the natural consequences of his use of intentionally or recklessly false material misstatements and omissions to obtain the arrest warrant. As the First Circuit explained in recently rejecting a similar argument, "a police defendant who acts intentionally or with reckless disregard for the truth may not insulate himself from liability through the objectively reasonable conduct of other officers." *Burke v. Town of Walpole*, 405 F.3d 66, 86 (1st Cir. 2005). That Trooper Ward actually arrested Plaintiff does not free Det. Dougans from constitutional responsibility for Det. Dougans's own acts. *See id.* Just as a police officer cannot "obtain a warrant on the basis of a 'bare bones' affidavit" and then shield himself from liability by relying on the fact that the officers who execute the warrant are "ignorant of the circumstances under which the warrant was obtained," *see United States v. Leon*, 468 U.S. 897, 923 n.24 (1984), Det. Dougans cannot falsely obtain a warrant without probable cause and then shield himself from

liability by relying on the fact that Trooper Ward, who executed the warrant, was ignorant "of the circumstances under which the warrant was obtained."

We recognize, of course, that "[n]ot every mix-up in issuance of an arrest warrant . . . automatically constitutes a constitutional violation for which a remedy may be sought." *Thompson v. Prince William County*, 753 F.2d 363 (4th Cir. 1985).[4] It is also plain that an officer is not required to "exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991). However, the Supreme Court has made equally clear that police officers cannot intentionally lie in warrant affidavits, or recklessly include or exclude material information known to them. *See Malley*, 475 U.S. at 344-45; *Leon*, 468 U.S. at 922-23; *Franks*, 438 U.S. at 155-56. An investigation need not be perfect, but an officer who intentionally or recklessly puts lies before a magistrate, or hides facts from him, violates the Constitution unless the untainted facts themselves provide probable cause. Here, they did not.

Of course, jurors may ultimately choose not to credit Plaintiff's evidence, but he has satisfied the first element of the *Saucier* analysis — proffering evidence of the violation of his constitutional right under the Fourth Amendment to be free from seizure without probable cause.[5]

---

[4]Det. Dougans attempts to rely on *Thompson* and other mistaken identity cases in which courts have found police officers did not violate the Constitution. These cases, however, do not aid Det. Dougans, for they all involve police officers who reasonably mistake an innocent party for the suspect sought in either applying for or executing a *properly obtained warrant*. None involve allegations, like those here, of an officer who makes deliberately or recklessly false material misrepresentations or omissions to obtain a warrant, for which there would otherwise be no probable cause.

[5]As the parties agree, Plaintiff's state constitutional claims under Articles 24 and 26 of the Maryland Declaration of Rights are construed *in pari materia* to his Fourth Amendment claim. *See Pickett v. Sears, Roebuck & Co.*, 775 A.2d 1218, 1224 (Md. 2001). Moreover, Maryland recognizes no immunity for officials committing state constitutional

B.

Accordingly, we turn to the second element of *Saucier* — whether the violated right was clearly established at the time of the events in question. If the right was not clearly established, Det. Dougans still enjoys qualified immunity from liability on this claim.

Qualified immunity "operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Saucier*, 533 U.S. at 206). For a constitutional right to be clearly established, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (internal quotation marks omitted). The "salient question" is whether "the state of the law" at the time of the asserted constitutional violation gave Det. Dougans "fair warning" that his alleged conduct was unconstitutional. *Id.* at 741. Although earlier cases involving "fundamentally similar" or "materially similar" facts are "not necessary to such finding," *id.*, in the case at hand, prior case law with "fundamentally similar" facts is abundant.

---

violations. *See DiPino v. Davis*, 729 A.2d 354, 371 (Md. 1999). Therefore, our holding that Plaintiff has proffered evidence of a violation of his Fourth Amendment rights requires that we reverse the grant of summary judgment to Det. Dougans on Plaintiff's state constitutional claims. Moreover, since our holding as to Plaintiff's constitutional claims rests on a conclusion that Det. Dougans's affidavit would not (stripped of material false statements and omissions) establish probable cause, we must also reverse the grant of summary judgment to Det. Dougans and the County on Plaintiff's malicious prosecution claims. *See Exxon Corp. v. Kelly*, 381 A.2d 1146, 1149 (Md. 1978); *see also DiPino*, 729 A.2d at 374 (noting malice element of tort may be inferred from a lack of probable cause). However, as the district court held, under Maryland law a false arrest claim will not lie against one wrongfully obtaining a warrant when that individual is not the detaining officer and the detaining officer arrests pursuant to a facially valid warrant. *Montgomery Ward v. Wilson*, 664 A.2d 916, 927 (Md. 1995); *see also Lewin v. Uzuber*, 4 A. 285, 289 (Md. 1886). Thus, we affirm the district court's grant of summary judgment to Det. Dougans and the County on Plaintiff's state law false arrest claim.

As explained above, the Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or "with reckless disregard for the truth" makes material false statements or omits material facts. *Franks*, 438 U.S. at 155; *See also, e.g.*, *Leon*, 468 U.S. at 922-23 & n.23; *Franks*, 438 U.S. at 164-65. We and our sister circuits have frequently applied this mandate. *See, e.g.*, *Colkley*, 899 F.2d at 301; *Burke*, 405 F.3d at 81-82; *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003); *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985).

Det. Dougans does not contend to the contrary. But, although his argument is not entirely clear, Det. Dougans nevertheless seems to claim entitlement to qualified immunity on the theory that the magistrate found that his affidavit provided probable cause to issue the warrant. Twenty years ago in *Malley*, however, the Supreme Court rejected such a contention. *Malley* holds that qualified immunity does *not* protect an officer who seeks a warrant on the basis of an affidavit that a reasonably well-trained officer would have known failed to demonstrate probable cause — even if the magistrate erroneously issues the warrant. *See Malley*, 475 U.S. at 345 (holding that in such circumstances a magistrate's finding of probable cause and issuance of the arrest warrant does not shield an officer from damages liability). A magistrate's issuance of the warrant will not shield an officer when the warrant affidavit is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," *id.*, nor will it shield an officer when the underlying affidavit includes deliberate and reckless misstatements and omissions, as here, *see Burke*, 405 F.3d at 82. As we explained in *Brooks*, "the judicial determination of probable cause does not 'break[ ] the causal chain between the application for the warrant and the improvident arrest' if the officer who sought the warrant did not possess probable cause." 85 F.3d at 184 n.7 (*quoting Malley*, 475 U.S. at 344 n.7).

The law was unquestionably clearly established at the time of the events at issue here. Det. Dougans had "fair warning," *Hope*, 536 U.S. at 741, that the Constitution did not permit a police officer deliberately, or with reckless disregard for the truth, to make material misrepresentations or omissions to seek a warrant that would otherwise be without probable cause. No reasonable police officer in Det. Dougans's position could believe that the Fourth Amendment permitted

such conduct. As we explained a decade ago, "a reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by statements that the officer knows or should know are false." *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996). Indeed, our sister circuits have also followed *Franks*, *Leon*, and *Malley*, and expressly held that the right asserted by Plaintiff here is "clearly established." *See, e.g.*, *Burke*, 405 F.3d at 88 (noting that the "prohibition on material omissions" in warrant applications is "clearly established"); *Holmes*, 321 F.3d at 1084 (holding, as of 1998, that it was clearly established law that "the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest." (internal quotations marks omitted)); *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1295 (9th Cir. 1999) ("We begin with the precept that a police officer who recklessly or knowingly includes false material information in, or omits material information from, a search warrant affidavit cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost." (internal quotation marks omitted)); *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) ("It is clearly established that the Fourth Amendment requires a *truthful* factual showing sufficient to constitute probable cause before an arrest warrant can issue." (emphasis added)). Det. Dougans has not cited, and we have not found, any court that has held to the contrary.

In sum, well before the events at issue in this case, it was clearly established that a police officer could not lawfully make intentionally or recklessly false material statements or omissions in order to obtain a warrant. Accordingly, Det. Dougans is not entitled to qualified immunity, as a matter of law, on the present record.

III.

For the foregoing reasons, the judgment of the district court granting summary judgment to Det. Dougans and the County is

*AFFIRMED IN PART AND REVERSED IN PART*.