**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 09-1932**

_____

JOHN MATTHEWS,

       Plaintiff – Appellant,

    v.

OFFICER ARTHUR THOMAS, of the Columbia Police Department
sued individually and officially; OFFICER SCOTT E.
MCDONALD, of the Richland County Sheriffs Office sued
individually and officially; OFFICER WALTER BALES, of the
Columbia Police Department sued individually and
officially; SERGEANT EWING, of the Richland County Sheriffs
Department sued individually and officially; CAPTAIN SMITH,
of the Richland County Sheriffs Department sued
individually and officially,

       Defendants – Appellees,

    and

ANN SPEAR, Assistant Solicitor, All being sued
individually; INVESTIGATOR TAYLOR, of the Columbia Police
Department sued individually and officially,

       Defendants,

    v.

RICHARD CHARLES RICHARDSON CATHCART,

       Movant.

_____

Appeal from the United States District Court for the District of
South Carolina, at Columbia.  Joseph F. Anderson, Jr., District
Judge.  (3:07-cv-01556-JFA)

_____

Argued:  May 12, 2010                    Decided:  July 1, 2010
_____

Before SHEDD, DUNCAN, and AGEE, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Duncan and Judge Agee joined.

_____

**ARGUED:** William Clifford Wood, Jr., NELSON, MULLINS, RILEY & SCARBOROUGH, LLP, Columbia, South Carolina, for Appellant. Peter Michael Balthazor, OFFICE OF THE CITY ATTORNEY, Columbia, South Carolina; Andrew Lindemann, DAVIDSON, MORRISON & LINDEMANN, PA, Columbia, South Carolina, for Appellees. **ON BRIEF:** Paul T. Collins, Candace C. Jackson, NELSON, MULLINS, RILEY & SCARBOROUGH, LLP, Columbia, South Carolina, for Appellant. Robert D. Garfield, Joel S. Hughes, DAVIDSON, MORRISON & LINDEMANN, PA, Columbia, South Carolina, for Appellees Officer Scott E. McDonald, Sergeant Ewing, and Captain Smith.

_____

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

John Matthews appeals the district court's order granting summary judgment to Officers Arthur Thomas and Walter Bales of the City of Columbia Police Department, and Officer Scott E. McDonald of the Richland County Sheriff's Department (collectively, "the Officers").[1]  For the reasons below, we affirm.

## I.

We view the evidence in the record in the light most favorable to Matthews, the non-moving party.  Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006) (en banc).  On January 11, 2007, at approximately 6:20 p.m., Sylvia Wilson was in the driveway of her home, unloading groceries from her car, when an African-American man in dark clothing accosted her and demanded her purse.  Ms. Wilson complied, and her assailant fled on foot. The next day, just before 2:00 p.m., Claire Haltiwanger was in the parking lot of a K-Mart when an African-American man wearing fatigues stole her purse off her shoulder.  The purse-snatcher fled in a red sedan, driven by an accomplice.  Within minutes, a

---

[1]  Matthews also sued Investigator Taylor of the Police Department and Sergeant Ewing and Captain Smith of the Sheriff's Department.  However, these defendants are not parties to this appeal.

man held-up a nearby mini-mart.  As the robber and an accomplice fled in a red sedan, the clerk called the police.

Officer Scott McDonald of the Sheriff's Department responded, and dispatch quickly broadcast a description of the get-away car involved in the mini-mart robbery over the radio. While investigating Ms. Haltiwanger's purse-snatching, Officer Walter Bales overheard this bulletin. Because of the similarities between the vehicle involved in the purse-snatching and the mini-mart hold-up, and the proximity of the K-Mart to the mini-mart, Officer Bales proceeded to the mini-mart. The mini-mart's security tape revealed that, just before the culprit entered the mini-mart, his accomplice, an African-American man wearing a camouflage jacket, exited the red sedan, went around the side of the mini-mart, and discarded a small bag. This bag turned out to be Ms. Haltiwanger's purse. Four days later the Sheriff's Department discovered the red sedan used in the mini-mart robbery; it contained items belonging to Ms. Wilson and Ms. Haltiwanger, including one of Ms. Wilson's checks made out to "John E. Matthews."

Officer McDonald then searched the Sheriff Department's databases for the name "John E. Matthews." Matthews (the plaintiff-appellant) appeared in the database because of a 2005 arrest. Officer McDonald shared this information with the Police Department, and Officer Bales created a color

4

photographic line-up using the Sheriff Department's 2005 photo of Matthews.

The color line-up comprises six photos of African-American men. In the line-up, Matthews is wearing a black, collared shirt with a yellow jacket over it. As for the five other men in the line-up, one is wearing a white t-shirt with a tan jacket over it, two are wearing white t-shirts, another is wearing a white t-shirt with a black jacket over it, and the final man is wearing a sleeveless black and white t-shirt. Each face has a discernable shadow behind it, and each photo is cropped differently. As for facial features, Matthews has a mustache and is bald. At least two of the other men in the line-up are bald, and at least three others have mustaches. J.A. 502.

On January 17, 2007, Officer Arthur Thomas of the Police Department presented this line-up to Ms. Wilson. Though Officer Thomas made a black and white copy of the color line-up to make it "as neutral as possible," J.A. 344, he nonetheless presented the color version of the line-up to Ms. Wilson. Ms. Wilson unequivocally identified Matthews. Officer Thomas subsequently swore out a warrant affidavit for Matthews, relying exclusively on this identification for probable cause.

On the same day, Officer Bales showed Ms. Haltiwanger a black and white version of the photo line-up. Initially, Ms. Haltiwanger told Officer Bales that none of the men in the line-

5

up looked like the purse-snatcher. However, she went on to say that photograph number two -- the photo of Matthews -- was the closest match. Ms. Haltiwanger then signed an affidavit, which stated: "I picked out a picture of [Matthews] which is the person . . . who committed the crime." J.A. 89. Ms. Haltiwanger understood the import of the identification affidavit, and at no time did she feel pressured by Officer Bales to identify Matthews. Based on this identification, Officer Bales swore out an arrest warrant that stated that Ms. Haltiwanger "did positively identify" Matthews. J.A. 93.

After learning about Ms. Haltiwanger's identification of Matthews, Officer McDonald wrote in his personal notes that, based on this identification, he and his superior officer had "agreed that there was no probable cause for an arrest warrant on Matthews for his participation in [the mini-mart] incident." J.A. 292 (emphasis added). However, in the same paragraph, after discussing the similarities between the suspects and the proximity of the mini-mart robbery and the K-Mart purse-snatching, Officer McDonald wrote "it is reasonable to believe that Matthews is involved" in the mini-mart robbery. Id. Officer McDonald then swore out a warrant that stated: "[Matthews] has been positively identified in this incident after being positively indentified in a photo line up by a victim in a related robbery that occurred in . . . proximity to

6

this robbery just minutes prior to this incident in the Columbia Police Dept. jurisdiction." J.A. 316. Matthews was arrested that day.

On April 4, 2007, the charges against Matthews for the Wilson robbery were dropped after surveillance tapes revealed that he was at work at the time of that robbery. On June 29, 2007, the state solicitor dismissed the remaining charges. Matthews was released on July 6, 2007.

On June 7, 2007, pursuant to 42 U.S.C. § 1983, Matthews filed a lawsuit against the Officers, claiming that they violated his Fourth Amendment rights by seizing him without probable cause. Further, relying on state law, Matthews asserted claims for malicious prosecution, intentional infliction of emotional distress, and civil conspiracy. The Officers moved for summary judgment, arguing that (1) they did not violate Matthews' constitutional rights and, even if they did, they are protected by qualified immunity from Matthews' § 1983 claims and (2) the state law claims are precluded by the South Carolina Tort Claims Act or, in the alternative, fail as a matter of law. Matthews filed responses in opposition.

At the summary judgment hearing, the Officers' attorneys discussed the § 1983 claims and the state law claims. Matthews' attorney responded to each argument, including a discussion of Matthews' state law claims. J.A. 588-90. The district court

denied the Officers' motions, citing the existence of genuine issues of material fact.

The Officers then moved for reconsideration, and the district court granted their motion, noting that it was especially interested in the qualified immunity issue. Thereafter, the district court conducted a second summary judgment hearing. After each side spoke regarding whether the Officers violated Matthews' constitutional rights, the court raised questions about the state law claims. Matthews' attorney did not object to this line of questioning; rather, he answered the court's questions. J.A. 639-40.

At the conclusion of this hearing, in an oral opinion, the district court granted the Officers' motions for summary judgment on the § 1983 claims because Matthews had failed to demonstrate a constitutional violation, and it granted the Officers' motions for summary judgment on Matthews' state law claims because there was insufficient evidence to support them. This appeal followed.

## II.

Matthews argues that the district court erred by granting summary judgment on his § 1983 claims in favor of the Officers on the basis of qualified immunity. Specifically, he argues that the Officers violated his clearly established

8

constitutional right to be free from seizure without probable cause because they had him arrested based on warrant affidavits containing material misstatements and omissions. We review the district court's order granting summary judgment <u>de novo</u>. <u>Jennings v. Univ. of N.C.</u>, 482 F.3d 686, 694 (4th Cir. 2007) (en banc).

"Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Henry v. Purnell</u>, 501 F.3d 374, 376-77 (4th Cir. 2007) (internal citation and quotation marks omitted). When a government official asserts qualified immunity, we must determine: (1) whether the facts alleged show that the officer's actions violated a constitutional right, and (2) whether the right asserted was clearly established at the time of the challenged actions. <u>Id.</u> at 377 (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001)). Both questions must be answered in the affirmative to defeat an official's claim of qualified immunity, and the plaintiff "bears the burden of proof on the first question -- <u>i.e.</u>, whether a constitutional violation occurred." <u>Henry</u>, 501 F.3d at 377.

To carry this initial burden, Matthews must show that each officer "deliberately or with a reckless disregard for the truth

9

made material false statements in his affidavit or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made the affidavit misleading." Miller v. Prince George's County, 475 F.3d 621, 627 (4th Cir. 2007) (internal citations and quotation marks omitted). "Reckless disregard" requires a showing that an officer, in light of all of the evidence, had "serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. With respect to omissions, Matthews must establish that the officer failed to inform the magistrate of facts that the officer knew would negate a finding of probable cause. Id. Evidence of negligence or honest mistake, however, is insufficient. Id. at 627-28. Further, "the false statements or omissions must be material, that is, necessary to the neutral and disinterested magistrate's finding of probable cause." Id. at 628 (internal citations and quotation marks omitted). With these standards in mind, we review each warrant affidavit in turn.

Matthews argues that Officer Thomas acted with reckless disregard for the truth by stating in his warrant affidavit that Ms. Wilson picked Matthews out of the line-up because Officer Thomas believed the line-up to be improperly suggestive and, therefore, knew that Ms. Wilson's identification was invalid. However, even in the light most favorable to Matthews, there is

10

no evidence that Officer Thomas believed that the color line-up was suggestive.  Though he testified that he copied the color line-up into black and white to make it "as neutral as possible," J.A. 344, there is no testimony that Officer Thomas actually believed that the color line-up was suggestive.  Officer Thomas, therefore, did not make a statement or omission in reckless disregard for the truth in his warrant affidavit.[2]

Matthews next argues that Officer Bales' warrant contains a material misstatement made in reckless disregard for the truth because it states that Ms. Haltiwanger "positively identified" Matthews even though her identification was equivocal at best.  Regardless of her initial (or subsequent) equivocation, Officer Bales did not make a materially false statement in reckless disregard for the truth in his warrant because she unequivocally identified Matthews in her affidavit, and it was reasonable for Officer Bales to rely on it.  There is no dispute that Ms.

---

[2] The parties cite to United States v. Saunders, 501 F.3d 384, 389-93 (4th Cir. 2007), and other related cases to argue whether the color line-up is suggestive.  This line of cases addresses whether a line-up is suggestive for purposes of introducing identification evidence at trial, a context very different from that presented by this case.  Even assuming that this precedent applies here, we find that the line-up is not suggestive.  Matthews may be wearing a black shirt with a yellow jacket, but he does not stand out.  J.A. 502.  Further, there is no evidence that the process was unfairly suggestive or that Ms. Wilson's identification was otherwise unreliable. Saunders, 501 F.3d at 389-90.

11

Haltiwanger: (1) signed an affidavit identifying Matthews, (2) understood the affidavit and its legal import, and (3) did not feel coerced to sign it. There is also no evidence that Officer Bales acquired the affidavit through trickery. Given these undisputed facts, we believe that, regardless of any equivocation, Officer Bales did not have "obvious reasons to doubt the accuracy of the information he reported." Miller, 475 F.3d at 627.

Finally, Matthews argues that Officer McDonald's warrant was made in reckless disregard for the truth because (1) it states that the mini-mart clerk "positively identified" Matthews as the robber, when in fact, Officer McDonald never presented a photo line-up to the mini-mart clerk, and (2) though Officer McDonald did not believe that he had probable cause to arrest Matthews, he sought a warrant. We disagree with Matthews on both points.

First, when read as a whole, Officer McDonald's arrest warrant for the mini-mart robbery is based on Ms. Haltiwanger's identification of Matthews and the similarities between the mini-mart robbery and Ms. Haltiwanger's purse-snatching. In fact, Officer McDonald never claimed he had shown a line-up to anyone at the mini-mart. Though perhaps inartful, Officer McDonald's warrant affidavit does not contain a misstatement. Second, there is no evidence that Officer McDonald believed that

12

he did not have probable cause to arrest Matthews. Though Matthews points to a statement in Officer McDonald's notes disclaiming probable cause, this is plainly a typographical error. To read these notes otherwise would be nonsensical because they would renounce probable cause in the first sentence of the paragraph and then, without hesitation, have the remaining two sentences of the paragraph assert facts and opinions supporting probable cause. J.A. 292. Therefore, Officer McDonald's affidavit does not contain a materially false statement made in reckless disregard for the truth.

After reviewing the facts in the light most favorable to Matthews, we find that the Officers did not deliberately or with reckless disregard for the truth make materially false statements or omissions in their warrant affidavits. The Officers, therefore, are entitled to judgment as a matter of law because Matthews failed to carry his burden of proof to demonstrate a violation of a constitutional right.[3] Accordingly, we affirm the district court.

---

[3] As a result of this holding, we need not reach the issue of whether the right allegedly violated was clearly established.

13

III.

Matthews also argues that the district court erred in granting the Officers summary judgment on his state law claims. Matthews does not challenge the substance of this decision; instead, he argues that the district court abused its discretion by ruling on these claims without providing sufficient notice. We review the district court's decision to rule on summary judgment without sufficient notice for an abuse of discretion. See Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

District courts have broad power to enter summary judgment when it is appropriate. Celotex Corp. v. Catrett, 477 U.S. 316, 326 (1986). However, "that power is contingent on giving the losing party notice that it must come forward and defend its claim." U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n, 873 F.2d 731, 735 (4th Cir. 1989). The notice need not be formal, but "it must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration." Id.; see, e.g., Allstate Ins. Co. v. Fritz, 452 F.3d 316, 323 (4th Cir. 2006) (finding that the presence of an argument in a motion for summary judgment alone gave the non-movant sufficient notice for the court to rule on it).

Here, after denying summary judgment on all of Matthews' claims, including his state law claims, the district court granted the Officers' motion to reconsider. Though the court's order specifically mentioned the qualified immunity issue, it granted the Officers' motion to reconsider their entire motion for summary judgment, which included their arguments against Matthews' state law claims. The district court's order granting the Officers' motion to reconsider gave Matthews ample notice that all of the issues raised in their motion for summary judgment, including the state law claims, would be reconsidered at the second hearing.

Further, Matthews had a full and fair opportunity to present all material relevant to the defense of these claims before the court granted summary judgment. It is undisputed that Matthews had the opportunity to respond to the Officers' arguments in his brief in opposition to summary judgment and that Matthews' attorney actually defended them at the first hearing. J.A. 588-90. In addition, at the second hearing, Matthews' attorney did not object to the court's questions related to his state law claims or ask for additional time to respond to them; rather, he answered them. J.A. 639-40. The district court, therefore, did not abuse its discretion by ruling on the Officers' motion for summary judgment without further notice.

IV.

For the reasons stated above, we affirm the district court's decisions.

AFFIRMED