**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 25-1213**

───────────

L.M., a minor, by his next friends and parents, Jane Roe #1 and John Doe #1,

Plaintiff - Appellant,

and

M.G., a minor, by his next friends and parents, Jane Roe #2 and John Doe #2; E.R., a minor, by his next friends and parents, Jane Roe #3 and John Doe #3,

Plaintiffs,

v.

JONATHAN GRAHAM, Detective, Leesburg Police Department, in his individual and official capacities,

Defendant - Appellee,

and

MICHELLE SMITH, Superintendent, Loudoun County Juvenile Detention Center, in her official capacities; JOHN DOE #4, Loudoun County Juvenile Detention Center, in his individual capacity; JOHN DOE #5, Loudoun County Juvenile Detention Center, in his individual capacity; JOHN DOE #6, Loudoun County Juvenile Detention Center, in his individual and official capacities; MARCUS TURNER, Loudoun County Juvenile Detention Center, in his individual capacity; ROB VERMONT, Loudoun County Juvenile Detention Center, in his individual capacity,

Defendants.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Michael Stefan Nachmanoff, District Judge. (1:23-cv-01574-MSN-IDD)

―――――――――

Argued:  December 9, 2025                    Decided:  February 27, 2026

―――――――――

Before WILKINSON, KING, and GREGORY, Circuit Judges.

―――――――――

Affirmed by published opinion.  Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge King joined.

―――――――――

Jonathan P. Sheldon, SHELDON & FLOOD, PLC, Fairfax, Virginia, for Appellant. Heather Kathleen Bardot, MCGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C., Fairfax, Virginia, for Appellee.

―――――――――

2

GREGORY, Circuit Judge:

L.M., a minor, was detained pursuant to a juvenile petition charging him with aggravated sexual battery of a fellow middle school student. These charges resulted in part from an investigation by Jonathan Graham, a detective with the local police department. The charges against L.M. were eventually dropped, and L.M. brought suit under 42 U.S.C. § 1983 for malicious prosecution. The district court dismissed L.M.'s complaint for failure to state a claim.

We agree that L.M. failed to a state a claim for malicious prosecution, so we affirm.

I.

A.

L.M. and Graham present conflicting versions of the events at issue. The facts as presented come primarily from L.M.'s complaint and certain exhibits attached to Graham's motion to dismiss. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). We may properly consider the extrinsic documents and videos attached to Graham's motion to dismiss because "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Withhohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). No party disputes on appeal that the attached exhibits are "authentic" and address facts "integral" to the complaint. *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018) (citing *Sec'y of State for Defence v.*

3

*Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).  Because L.M. did not challenge the authenticity of these materials below or on appeal, the district court properly considered them at the Rule 12(b)(6) stage.[1]

In October 2022, A.D., a Loudon County Public Schools ("LCPS") student, reported to Y.A.'s brother that A.D. had seen three students assault Y.A.  Y.A. is an 11-year-old boy with autism who attended school with A.D.  On October 23, 2022, Y.A.'s brother emailed LCPS, explaining A.D.'s account of the bullying and sexual assault Y.A. had experienced.

LCPS forwarded the email to Jonathan Graham, a detective with the local police department.  Graham then questioned A.D. at school.  A.D. identified three students who he had seen sexually assault Y.A.  One of the students was identified as a student named "L"—he had the same first name as L.M.  R. Doc. 21-5 (A.D. Forensic Interview).  Later, A.D.'s mother brought A.D. to the police department for a forensic interview; A.D. had been sharing details at home that he had not disclosed in his initial interview with Graham.  In the recorded forensic interview, A.D. shared more detailed information about the sexual assaults committed against Y.A.  He identified the three perpetrators again.  A.D. also described L.M. physically and noted that he had an issue earlier in the year with "L" because "L" had been bullying him.

---

[1] These documents include:  an email chain between Y.A.'s family and the school reporting the allegations; a video recording of Y.A.'s forensic interview; a video recording of A.D.'s forensic interview; Graham's affidavit in support of the search warrant and his case affidavit; and an audio recording of Graham's phone call with L.M.'s father.

After the interview, Graham presented A.D. with photographs of all the male students who entered the gym locker room during the timeframe at issue. A.D. identified two of the students—not parties to this appeal—who had sexually assaulted Y.A. But A.D. noted that the third student, the boy whose name began with "L," was not pictured in the roster presented. A.D.'s mother suggested that Graham contact LCPS to obtain the student's full name, since A.D. had reported him to the school for bullying earlier that school year. The school identified L.M. as the student who bullied A.D.

At that point, Y.A. was brought into a Child Advocacy Center for a forensic interview. In the taped interview, Y.A. stated that A.D. could identify the boys who had assaulted him because A.D. witnessed the assault. He added that the boys "S.E.X. at [him]." J.A. 133. Y.A. was then given a piece of paper with a diagram of a body on it; he was told to circle the parts of his body that the boys touched. Y.A. circled the entire diagram. He told the interviewer that he was "shaken up" by the assault. J.A. 133.

Graham compiled the information from his investigation and submitted it to Loudon County Juvenile Intake on November 8, 2022. Juvenile Intake assesses whether the information submitted suffices to establish probable cause for a juvenile petition. *See* Va. Code § 16.1-260. Graham also spoke to L.M.'s father and notified him that L.M. was a suspect in the investigation. Soon after, Juvenile Intake notified Graham that probable cause existed to file a juvenile petition against L.M. for aggravated assault of Y.A. Juvenile Intake also issued a detention order for L.M. alongside the juvenile petition. Graham called L.M.'s father to inform him of the petition and detention order, and L.M.'s father told

5

Graham that L.M. did not know Y.A., L.M. was not in a class with Y.A., and that they had not had the opportunity to provide their side of the story.

Graham signed the detention order and transported L.M. to the Juvenile Detention Center. About a month later, Graham met with the Assistant Commonwealth Attorney ("ACA") to discuss the investigation, at which point he learned that A.D.'s statements to the ACA conflicted with his statements to Graham during the forensic interview. Graham then encouraged the ACA to drop the charges against the boys, including L.M. The ACA *nolle prossed* the charges against L.M. soon after.

B.

L.M., along with two plaintiffs not party to this appeal, brought a malicious prosecution claim against Graham and others under 42 U.S.C. § 1983, asserting violations of Virginia law and the Fourth Amendment of the United States Constitution. Graham moved to dismiss the complaint for failure to state a claim. After briefing and oral argument, the district court granted Graham's motion and dismissed him from the case with prejudice. The district court reasoned that L.M. failed to allege facts that, when taken as true, demonstrated that L.M.'s seizure was not supported by probable cause. And the court found that, even if the prosecution was not adequately supported by probable cause, L.M. failed to plausibly allege that Graham "caused" L.M.'s seizure since the probable cause determination is made by another entity altogether—the Juvenile Intake Officer.

L.M. timely appealed.

6

II.

The facts as alleged do not give rise to a cognizable malicious prosecution claim under federal or state law. Accordingly, we affirm the district court's dismissal of L.M.'s complaint.

A.

The Federal Rules of Civil Procedure permit dismissal of a complaint when it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a plaintiff must "state a claim to relief that is plausible on its face" when accepting all well-pleaded allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). We review de novo the dismissal of a complaint for failure to state a claim. *See Moretti v. Thorsdottir*, 157 F.4th 352, 359 (4th Cir. 2025).

To succeed on a malicious prosecution claim under both Virginia law and the Fourth Amendment to the United States Constitution, the plaintiff "must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). *See O'Connor v. Tice*, 704 S.E.2d 572, 575 (Va. 2011).[2]

Neither party disputes that the juvenile proceedings terminated in L.M.'s favor. Thus, the question before us is whether L.M. sufficiently pleaded that his seizure was not supported by probable cause and that Graham caused L.M.'s seizure.

---

[2] Virginia law requires the plaintiff plead an additional element: malice. However, the Virginia Supreme Court has determined that malice may be inferred from a "lack of probable cause," so we need not reach the question of whether L.M. adequately pleaded malice. *See Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 112 (2021).

B.

We begin with probable cause. A probable cause determination mandates considering the "totality-of-the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230 (1983). To assess probable cause, we consider "the suspect's conduct as known to the [judicial] officer, and the contours of the offense thought to be committed by that conduct." *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). The relevant question is whether the officer took "reasonably prudent steps" to determine the correct individual was seized. *Smith v. Munday*, 848 F.3d 248, 254-55 (4th Cir. 2017).

L.M. contends that his seizure was unsupported by probable cause because Graham's case submission contained material factual omissions that would have negated finding probable cause. Thus, L.M. must have plausibly alleged that Graham omitted from the affidavit "material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Moretti*, 157 F.4th at 360 (citing *Miller v. Prince George's Cnty.*, 475 F.3d 621, 627 (4th Cir. 2007)). "For an omitted fact to be material, the omission must do more than potentially affect the probable cause determination: it must be necessary to the finding of probable cause." *Id.* (citations omitted). "To determine materiality, we excise the offending inaccuracies . . . and then determine whether or not the corrected warrant affidavit would provide adequate grounds for the [seizure]." *Evans*, 703 F.3d at 651 (cleaned up). Reckless disregard "can be established by evidence that a police officer failed to inform the judicial officer of facts he knew would negate probable cause." *Miller*, 475 F.3d at 627 (citations omitted).

8

Va. Code § 18.2-67.3 defines aggravated sexual battery as sexual abuse of a person under the age of thirteen through the use of the victim's "mental incapacity or physical helplessness." No party disputes that Y.A. was under thirteen and has "diminished mental capacity due to his autism," J.A. 93, so the question is simply whether a "fair probability" existed to believe that L.M. was one of the individuals that allegedly sexually assaulted Y.A. *Kaley v. United States*, 571 U.S. 320, 338 (2014).

We hold that it did. Ample facts supported finding probable cause here, including Y.A.'s description of his assault; Y.A.'s statement that A.D. witnessed the event and could identify the perpetrators; and A.D.'s detailed description to Graham on two separate occasions of the events in question. *See English v. Clarke*, 90 F.4th 636, 646 (4th Cir. 2024) ("A victim's 'reliable identification of his attacker' almost always suffices to establish probable cause.") (citing *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991)).

L.M., however, argues that exculpatory evidence existed to demonstrate that A.D.'s allegations were wholly fabricated. He alleges that Graham learned prior to L.M.'s detention that A.D. had previously falsely reported that L.M. was bullying him, J.A. 19 ¶ 30; that L.M. was "was not in the 8th-period P.E. class when the purported assault was alleged to have occurred," J.A. 19 ¶ 31; and that Y.A. denied A.D.'s account of the assault. J.A. 19 ¶ 28. L.M. contends that Graham's omission of this evidence from his case file contravenes the Fourth Amendment.

However, we do not believe these omissions are material, and we therefore hold that excluding this factual context did not undermine probable cause in this case.

9

First, even if A.D.'s prior allegation against L.M. was false, as the complaint alleges, Y.A. identified A.D. as the individual who witnessed the assault in a forensic interview, and A.D. provided detailed descriptions—twice—of the assault he witnessed by L.M. Graham also attempted to establish the identity of the perpetrators through "multiple methods," so he had ample reason to believe the veracity of A.D.'s statements. *Smith*, 847 F.3d at 254. Indeed, he does not seem to have misrepresented the facts A.D. conveyed to him, including which individuals A.D. identified as the perpetrators of the assault.

Second, though L.M. alleges that Graham learned L.M. was not in the P.E. class at the time of Y.A.'s assault, the complaint does not specify whether Graham knew L.M. was not *enrolled* in the P.E. class when the incident occurred or if Graham learned L.M. was not present in the locker room during the assault. And, importantly, this fact alone is not enough to defeat probable cause when weighed against the totality of the information Graham possessed at the time he submitted his case file.

Finally, though L.M. alleges that Y.A. denied A.D.'s account of the events at issue, J.A. 19 ¶ 28, this allegation is squarely contradicted by Y.A.'s forensic interview, which was attached as an exhibit to Graham's motion to dismiss. Indeed, Y.A. specifically stated that the boys had "S. E. X. at [him]" and that A.D. could identify the perpetrators because he saw the event happen. J.A. 133 (citing R. Doc. 21–3). So, while Y.A. did not himself identify L.M. as a perpetrator of the assault, he affirmed that the assault occurred and recognized that A.D., a witness to the event, could identify the perpetrators. This, too, validated Graham's reliance on A.D.'s statements and accordingly supported finding probable cause.

10

We have found probable cause lacking in cases where the evidence was "so scant" it was essentially "nonexistent." *Smith*, 848 F.3d at 255. But here, where A.D.'s identification of L.M. was "specific and relatively certain," there was no reason for Graham to doubt the truth of A.D.'s identification. *English*, 90 F.4th at 646. Nor would inclusion of the alleged omissions be enough to overcome A.D.'s detailed eyewitness testimony. Graham investigated the events reported to him, and he relied on eyewitness testimony when developing his case file. Perhaps Graham could have interviewed L.M. earlier in his investigation or attempted to further corroborate A.D.'s story. But his failure to do so does not contravene the Fourth Amendment in this case. *See Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000) (noting that an investigating officer need not "exhaust[] every potential avenue of investigation").

We agree with the district court: L.M. did not allege facts that, if proven true, would negate probable cause. On this basis alone, L.M.'s malicious prosecution claims fail.

C.

We now turn to the question of causation: whether Graham was the but-for and proximate cause of L.M.'s seizure. *Evans*, 703 F.3d at 647. Generally, "subsequent acts of independent decision-makers" can "break the causal chain" between an investigating officer's misconduct and the plaintiff's seizure. *Id.* But this rule has limits: the causal chain does not sever when a law enforcement officer fails to disclose exculpatory evidence to a prosecuting official or otherwise misleads them. *Id.* at 647–48. The mere fact that the Juvenile Intake Officer made the ultimate probable cause determination in this case does not alone absolve Graham of liability.

11

However, L.M. failed to include any allegations in his complaint relating to Graham's failure to disclose exculpatory evidence to the Juvenile Intake Officer. The complaint alleges that Graham himself made the probable cause determination. *See* J.A. 21. To the contrary, Virginia Code § 16.1-260 specifies that the juvenile "intake officer" determines if there is "probable cause for the issuance of [a]" petition after he "receive[s] a complaint alleging facts which may be sufficient to invoke" the juvenile court's jurisdiction. The statute also authorizes the Juvenile Intake Officer to "refuse to authorize the filing of a petition" "if the intake officer believes that probable cause does not exist." Va. Code § 16.1-260(C). Without specific allegations that Graham withheld material facts from the Juvenile Intake Officer or unduly influenced the officer's probable cause determination, L.M. did not allege that Graham caused L.M.'s seizure. So L.M.'s malicious prosecution claim fails on this basis, too.

*                    *                    *

We recognize this case is laden with difficulties for both parties. As the district court rightly acknowledged, the initial accusations against L.M. were serious, as are L.M.'s allegations that the accusations are false. We are constrained by the Fourth Amendment to recognize that Graham's failure to investigate the accusations further does not contravene the Constitution. But "good constitutional law is not always good policy." Rachel A. Harmon, *Why Arrest?*, 115 Mich. L. Rev. 307, 328 (2016).

We affirm the judgment of the district court.

*AFFIRMED*

12